Thomas A. Mitchell (3737)
tommitchel@utah.gov
John W. Andrews (4724)
jandrews@utah.gov
Special Assistant Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
State of Utah, School and Institutional
Trust Lands Administration
675 East 500 South, Suite 500
Salt Lake City, UT 84102
Telephone: 801-538-5100
*Attorneys for the State of Utah, School and Institutional
Trust Lands Administration*

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| **State of Utah, School and Institutional Trust Lands Administration,** <br><br> Plaintiff, <br><br> v. <br><br> **Sally Jewell in her official capacity as Secretary, United States Department of the Interior; Neil Kornze in his official capacity as Director, United States Bureau of Land Management; Juan Palma in his official capacity as Utah State Director, Utah Bureau of Land Management,** <br><br> Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR MANDAMUS** |

*Introduction*

This case arises out of the failure of the Defendants, U.S. Department of Interior and

Bureau of Land Management (collectively "BLM"), to perform its mandatory duties to remove

1

excess wild horses from the Plaintiff's private "school section lands", held in trust by the State of Utah, School and Institutional Trust Lands Administration ("SITLA"), pursuant to the Wild Free-Roaming Horses and Burros Act of 1971 ("WHBA"). Defendant BLM has failed to comply with its statutory duties, and its failure has resulted in wild horse populations, which have and continue to severely damage the private rangeland resources of SITLA. SITLA has provided the BLM with notice of the presence of and damage from wild horses on these "school section lands" but wild horses and their depredation of rangeland resources on these lands continue unabated. Plaintiff has filed suit to compel non-discretionary agency action as required by law to immediately remove wild horses from SITLA's lands.

## JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 5 U.S.C. § 702 (providing for judicial review of federal agency action and failure to act under the Administrative Procedure Act), 28 U.S.C. § 1331 (providing jurisdiction over federal questions), and 28 U.S.C. § 1361 (providing for original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff). Jurisdiction is also proper under 28 U.S.C. § 2201, because plaintiff seeks to declare its rights and legal relations.

2. Venue is proper in this court pursuant to 28 U.S.C. §§ 1391 (b)(2) and (e)(2) because Defendants are officers or employees of the Defendant agencies of the United States government, the acts or omissions giving rise to the claims occurred in Utah, and the property that is the subject of this action is situated in Utah.

## PARTIES

3. Plaintiff State of Utah, School and Institutional Trust Lands Administration manages lands granted in trust to Utah by the U.S. Congress in the Enabling Act, Act of July 16, 1984, and accepted by the state in Article XX of the Utah Constitution. SITLA was created by the Utah legislature in the Trust Lands Management Act of 1994 and codified at Utah Code Ann. § 53C-1-101 *et. seq*. These "school section lands" are mandated to be managed ". . . in the most prudent manner possible, and not for any purpose inconsistent with the best interests of the trust beneficiaries." Utah Code Ann. §53C-1-101(2)(B). The Utah Constitution makes clear that these lands are not public lands of the state, but are school and institutional trust lands held in trust for the beneficiaries named in the Enabling Act. Utah Const. art. XX § 2.

4. Defendants Jewell, as Secretary, and the United States Department of Interior, the BLM and its Director Kornze, and Utah State Director Juan Palma are responsible for the actions and failures to act by the BLM. BLM is charged with the management of wild horses under the WHBA and is charged, specifically with the duty to immediately remove wild free-roaming horses which stray from public lands onto privately owned land after notice from the land owner to do so.

## FACTS AND LEGAL AUTHORITIES

5. The Enabling Act, granted four sections (2, 16, 32, and 36) in every township and range to the new state of Utah, which resulted in a "checkerboard" pattern of trust land ownership whereby the school section lands are scattered throughout a domain of federal public lands. Additional lands granted in lieu of the original four sections are sometimes blocked

together but remain surrounded by lands under the ownership and control of the federal government, in this case the BLM.

6. Under the WHBA, "wild free-roaming horses and burros" on BLM land are under the Secretary of Interior's jurisdiction for the purpose of management. *See* 16 U.S.C. § 1333(a).

7. The Secretary and the BLM must establish "herd management areas" ("HMAs") for the maintenance of wild horse and burro herds, within which to establish appropriate management levels ("AMLs") for these herds, considering habitat requirements and the relationships with other public uses of the public and private lands. *See* 43 C.F.R. § 4710.3-1

8. The Secretary and the BLM shall arrange for the removal of wild free-roaming horses or burros which stray from public lands onto privately owned lands upon being informed by the owner of the privately owned land of the presence of such animals on these private lands. 16 U.S.C. § 1334.

9. SITLA, in its trust capacity for the enumerated beneficiaries sells grazing permits to permittees who purchase the same to exploit the range resources on these lands by grazing livestock. The grazing permits which are subject to application on a competitive basis grant an authorized right to utilize a specified amount of forage expressed in the form of animal unit months ("AUMs") for specific time periods. The return to the trust is based on the number of AUMs available for permitting.

10. SITLA has received complaints from its grazing permittees on school section lands which are within or adjoin HMAs that the forage for which they have contracted is not available by reason of wild horse depredation on these permitted lands. In some instances

permittees have sought an abatement of grazing fees which after an investigation has been granted by SITLA.

11.     SITLA employees have observed and documented wild horses grazing on SITLA lands and damage to the condition of the range resources.  (Ex. A to the complaint.)  This ongoing damage results in fewer AUMs available for permitting and a loss of revenue to the trust beneficiaries.

12.     BLM has documented wild horses presently in excess of its own established AMLs for all of the HMAs in the Price and Cedar City Field Offices as evidenced by the written correspondence to BLM's grazing permittees, many of whom are also SITLA grazing permittees.

13.     SITLA has informed the Cedar City Field Office of the BLM on four occasions beginning on March 1, 2012 and ending on November 13, 2013 of the need to remove wild horses from 26,537.65 acres of SITLA lands in the Blawn Wash Herd Area.  (Ex. A, at 130-34.)  In the summer of 2014 some but not all horses were removed from the Blawn Wash Herd Area and SITLA lands within the area.

14.     On July 14, 2014 SITLA gave written notice of the presence of wild horses on 183,639.9 acres of SITLA lands of which 89,773.02 acres are within HMAs administered by the Cedar City Field Office of the BLM and requested that the wild horses be removed from the SITLA lands both within and in the vicinity of the HMAs described in the notice.  (Ex. A, at 22, 26, 29, 33, 37, 41, 62, 67, 70, 73, 81, 85, 88, 93, 96, 99, 102, 105, 110, 113, 116, 119, 125)  As of the date of this complaint there has been no response from the BLM.

15.     On July 14, 2014 SITLA gave written notice of the presence of wild horses on 120,641.7 acres of SITLA lands of which 65,413.25 acres are within HMAs administered by the

Price Field Office of the BLM and requested that the wild horses be removed from the SITLA lands both within and in the vicinity of the HMAs described in the notice. (Ex. A, at 3, 9, 15, 128.) As of the date of this complaint there has been no response from the BLM.

16. On November 18, 2014 SITLA gave written notice of the presence of wild horses on 21,164.79 acres of SITLA lands which are within and adjacent to HMAs administered by the Cedar City Field Office, the Fillmore Filed Office, and the Price Field Office of the BLM and requested that the wild horses be removed from SITLA lands both within and in the vicinity of the HMAs described in the notice. (Ex. A.) As of the date of this complaint there has been no response from the BLM.

17. On January 8, 2015 SITLA gave written notice of its intent to sue for failure to act on non-discretionary duties under the WHBA to Defendants. (Ex. B). As of the date of this complaint there has been no response from Defendants.

18. The WHBA mandates that the BLM remove wild horses and burros from private lands, while at the same time prohibiting the private land owner or its permittees from taking action to remove the wild horses and burros from their lands.

19. Because of wild horse populations in excess of the BLM's AMLs on federal land any action to improve range and grazing conditions on Plaintiff's lands causes excess horses to move on to Plaintiff's lands.

20. The Defendants have not and do not intend to take timely action to remove wild horses from Plaintiff's private lands.

## COUNT I: AGENCY FAILURE TO ACT-FAILURE TO REMOVE WILD HORSES FROM PRIVATE LAND

21.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

22.     The WHBA requires BLM to remove wild horses and burros that stray from public lands onto private land.  *See* 16 U.S. C. § 1334.

23.     Upon notification, Defendants have a plainly prescribed, ministerial duty to remove the horses or burros which occupy the private land.  *See* 16 U.S.C. § 1334.

24.     Plaintiffs have notified the BLM of the presence of wild horses on their private lands and requested removal. These horses have and are now causing damages to the plaintiff's lands.

25.     The BLM has failed or refused to comply with its non-discretionary duties to remove the wild horses from plaintiff's private lands.

26.     Defendants' failure and refusal to timely remove the wild horses which have strayed from the public lands on to Plaintiff's private lands is unlawful and is arbitrary and capricious.  Defendants should be compelled to perform their ministerial duties under the law. *See* 5 U.S.C. § 706(1) (providing that a reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed") and (2)(A) (providing that the reviewing court shall hold unlawful agency action that is arbitrary and capricious).

## COUNT II: MANDAMUS RELIEF

27.     All allegations set forth in the paragraphs above are hereby incorporated by reference as if fully set forth below.

28. Defendants have a clear legal, mandatory duty to immediately remove wild horses from Plaintiff's private lands on which they have strayed as set forth in Count I.

29. Defendants' asserted excuses for non-performance of their legal duty, namely for budgetary shortfalls, are not valid defenses under the law so as to justify their refusal and failure to perform their removal duties under the law.

30. The Mandamus Act, 28 U.S.C. § 1361 and the APA are different means to compel an agency to take action which by law it is required to take.

## REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the Court enter judgment against Defendants and grant the following relief:

1. Issue a declaratory judgment that the BLM's failure to remove all wild horses from the Plaintiff's private property is unlawful and in violation of the APA and enter an order compelling Defendants to within a reasonable time remove all stray wild horses from the highest priority 21,164.79 acres of Plaintiff's lands as requested on November 18, 2014;

2. Grant mandatory injunctive relief and mandamus relief to compel further requested order;

3. Award Plaintiff's reasonable costs, litigation expenses and attorneys' fees; and

4. Grant such further and other relief as the Court deems proper.

RESPECTFULLY SUBMITTED this 3rd day of February, 2015.

    /s/ Thomas A. Mitchell
Thomas A. Mitchell
Counsel for the State of Utah, School and
Institutional Trust Lands Administration